UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JONATHAN VIDLAK,

    Plaintiff,

v.

JUSTIN COX,

    Defendant.

Case No. 17-cv-160-JPG-GCS

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 65) of Magistrate Judge Gilbert C. Sison recommending that the Court grant defendant Justin Cox's motion for summary judgment (Doc. 49). Vidlak (Doc. 66) and Cox (Doc. 67) have objected to the Report.

**I.    Standard of Review**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    Background**

This case arose from events in September 2015 at the United States Penitentiary at Marion, Illinois ("USP-Marion"). There, numerous boxes of old fluorescent lightbulbs, which contain small amounts of mercury, were broken on purpose as part of the process to dispose of

the bulbs. Vidlak claims that Cox, a foreman in the electrical shop at the United States Penitentiary at Marion, Illinois ("USP-Marion") broke several boxes of bulbs, and then ordered several inmates to clean up the broken bulbs. Vidlak claims Cox exhibited deliberate indifference to his safety in violation of his Eighth Amendment rights by exposing him to mercury from the broken bulbs.

### III. The Report

Magistrate Judge Sison found in the Report that, regardless of who actually broke the bulbs, Vidlak was not one of the inmates who broke or cleaned up the broken bulbs. Instead, he remained 15-20 feet away and was told to wear personal protective equipment (gloves and safety glasses). Several days later he was ordered to move the trash cans containing the broken bulbs and then transfer the broken bulbs into 55-gallon drums.

Magistrate Judge Sison found that Vidlak could not establish an objectively serious medical need or future risk of harm to prove his Eighth Amendment deliberate indifference claim. There is no evidence Vidlak has suffered any serious injury or developed any serious medical need because of his exposure to the broken bulbs. Magistrate Judge Sison further found a lack of evidence that Vidlak was exposed to levels of any toxin that would pose an unreasonable risk to his future health. He notes that Vidlak used some protective gear and remained at a distance from the bulbs when they were being broken. He further notes that there is no medical or scientific evidence that the level of exposure Vidlak experienced was reasonably certain to pose a future health risk.

Magistrate Judge Sison further found Cox was not entitled to qualified immunity because, in September 2015, it was clearly established that exposure to unreasonably high levels of environmental toxins posed a serious risk to an inmate's future health, satisfying the objective

component of an Eighth Amendment claim.

## IV. Objections

Vidlak and Cox both object to the Report. In light of those objections, the Court conducts a *de novo* review of the summary judgment motion.

### A. Vidlak's Objection

Vidlak summarizes his objection quite nicely: "As mercury clearly poses health risks, and Plaintiff has alleged he was exposed to mercury, a claim of future risk has been made." Pl.'s Obj. 2 (Doc. 66). He argues that his exposure was substantial because one of the witnesses testified that the immediate area was engulfed in a "thick cloud of white dust" while the bulbs were being broken. He posits that a jury could find such exposure is dangerous, and points to Bureau of Prisons documents acknowledging the danger of even breaking a single bulb.

Vidlak fails to understand that it is not enough to show he was exposed to some level of mercury. Millions of humans are exposed to mercury every day through fish, amalgam fillings, burning coal or wood, and even broken fluorescent lightbulbs. It is true that generally we humans try to minimize exposure—like having procedures to protect ourselves from broken fluorescent lightbulbs—because we know mercury is toxic, but there is no evidence in this case that mere exposure to *any* mercury whatsoever *necessarily* creates a *serious* risk to future health. That is what must be true for Vidlak's logic to work, yet there is no evidence to support that theory. In fact, the health effects from the kind of mercury contained in fluorescent lightbulbs—elemental mercury—are not clear:

> The human health effects from exposure to low environmental levels of elemental mercury are unknown. Very high mercury vapor concentrations can quickly cause severe lung damage. At low vapor concentrations over a long time, neurological disturbances, memory problems, skin rash, and kidney abnormalities may occur.

Centers for Disease Control and Prevention, Mercury Factsheet (Apr. 7, 2017), https://www.cdc.gov/biomonitoring/Mercury_FactSheet.html. There is simply no evidence that Vidlak currently displays quickly developing symptoms of exposure to high mercury vapor concentrations or that he was exposed to low vapor concentrations over a long period of time.

Furthermore, Vidlak's belief that the "thick cloud of white dust" was actually a "cloud of mercury gas" is pure speculation, especially in light of the fact that when mercury evaporates it becomes a colorless, invisible vapor, not a "thick cloud of white dust." U.S. Environmental Protection Agency, Basic Information about Mercury (visited Apr. 1, 2019), https://www.epa.gov/mercury/basic-information-about-mercury.

In sum, Vidlak has simply failed to present evidence from which a reasonable jury could find his exposure to mercury in September 2015 has seriously harmed him or poses a serious threat to his future health. To the extent Vidlak claims his lack of counsel has prevented him from obtaining evidence that would convince a jury of the future danger to his health, the Court rejects that argument. As noted above, there is no evidence of how much exposure Vidlak suffered. Even so, scientific authorities indicate high, concentrated exposure quickly lead to symptoms and that low-level exposure over time can cause harm, not that one potential exposure of unknown concentration poses an unreasonable risk of future health damage.

B. Cox's Objection

Cox objects to the denial of qualified immunity because he believes it was not clearly established in September 2015 that his conduct, even viewing the evidence in the light most favorable to Vidlak, violated the Eighth Amendment.

For the reasons discussed above, the Court finds the first prong of the qualified immunity

4

inquiry has not been satisfied. The facts, viewed in Vidlak's favor, do not show an Eighth Amendment violation because there is not sufficient evidence of an objectively serious medical need or future risk of harm resulting from exposure to mercury in September 2015. Therefore, Cox is entitled to qualified immunity without the need to evaluate the clarity of the law regarding exposure to hazardous materials in September 2015, the second prong of the qualified immunity inquiry.

## V. Conclusion

For the foregoing reasons, after conducting a *de novo* review, the Court hereby:

- **ADOPTS** the Report (Doc. 65) as **MODIFIED** by this order;
- **OVERRULES** Vidlak's objection (Doc. 66);
- **SUSTAINS in part** Cox's objection (Doc. 67);
- **GRANTS** Cox's motion for summary judgment (Doc. 49);
- **DENIES as moot** Cox's second motion to continue the trial (Doc. 71); and
- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: April 4, 2019**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**